UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

LA QUINTA CORPORATION, et al.                                                                PLAINTIFFS

v.                                                                    CIVIL ACTION NO. 3:05CV-328-S

HEARTLAND PROPERTIES, LLC, et al.                                                         DEFENDANTS

## MEMORANDUM OPINION

This matter is before the court on motions of the plaintiff, Baymont Franchising, LLC, for an award of damages and attorneys' fees (DN 86) and for leave to withhold billing memoranda (DN 87).

This action arose from the termination of a franchise agreement between Baymont and the defendant, Heartland Properties, LLC, in April, 2005. The defendants entered into a franchise agreement in 1994 to operate a hotel in Shepherdsville, Kentucky. Amendments to the agreement were entered into in October, 2001 and September, 2003. In the Fall of 2004, Baymont adopted a System Standard for computerized reservations known as the L.I.S.A. System which necessitated the installation of computer hardware and software at Baymont franchise hotels. Franchisees were required to enter into a software license agreement by which payments for the acquisition, installation, and initial training on the system were amortized over the remaining term of the franchise agreements. After a number of unsuccessful attempts to resolve various points of controversy, Heartland was notified by letter dated March 25, 2005 that its rights under the license agreement was terminated. Despite being given thirty days to cure, Heartland did not sign the L.I.S.A. System agreement or utilize the L.I.S.A. System. Further, Heartland did not deimage the property or return proprietary materials to Baymont, but rather continued to operate under the Baymont name at least until this court entered a preliminary injunction in February, 2006.

- 2 -

The parties filed claims against one another each claiming that the other had breached its obligations. On August 9, 2007, the court considered cross-motions for summary judgment and ruled that Baymont was entitled to judgment on all claims of its complaint. Baymont now seeks an award of:

> 1. $19, 852.52 in Recurring Fees and accounts receivable that Heartland owed to Baymont under the license agreement at the time of termination, plus prejudgment interest at 8% per annum.
>
> 2. $111,325.37 in liquidated damages for early termination, as provided for under the license agreement, plus prejudgment interest at 8% per annum.
>
> 3. $178,875.99 in treble damages for willful, unauthorized use of Baymont's intellectual property in violation of the Lanham Act.
>
> 4. $398,045.06 in attorneys' fees pursuant to Section 7(c) of the license agreement and for willful violation of the Lanham Act.

The court will address these categories of damages *seriatim*.

## I. Recurring Fees Due and Owing

The defendants do not contest that they owed $19,852.52 in unpaid fees at the time of termination. Therefore, the award of this sum plus prejudgment interest at the rate of 8% per annum[1] is proper.

## II. Liquidated Damages

Section 14(a) of the license agreement provides for an award of liquidated damages in the event of termination due to the licensee's uncured default. The provision defines "Liquidated Damages" as "an amount equal to 100% of the aggregate Recurring Fees which accrued with respect ro Inn operations during the immediately preceding 36 full calendar months." Wisconsin law, which governs the construction of the terms of the agreement, directs that liquidated damages may be contractually agreed in an amount which is "reasonable in light of the anticipated or actual harm

---

[1] The parties agree that the prejudgment interest rate of 8% per annum found in KRS 360.010(1) applies herein.

- 3 -

caused by the breach, the difficulties of proof of loss, and the inconvenience or nonfeasibility of otherwise obtaining an adequate remedy." Wis.Stat.Ann. §402.718.[2]

Baymont is entitled to liquidated damages according to the formula in the agreement in the amount of $111,325.37. Baymont has shown entitlement to this sum inasmuch as the royalties over the remaining term would have exceeded $400,000.00. Trivedi Aff., ¶¶ 18-20; Ex. A2. Thus the award is reasonable in light of this approximation.

The defendants urge that they had a right to terminate the license agreement on September 25, 2006. They therefore contend that the anticipated loss of royalties should be limited to the period of time from notification by Baymont of termination of their rights (March 25, 2005) to the date upon which they could have, and intended to, terminate the agreement (September 25, 2006). They conclude that the liquidated damages sum is thus unreasonable in light of this shortened period of loss. There has been no evidence offered, however, that the requisite notice was given that Heartland was exercising its right of termination on September 25, 2006. This argument is therefore without merit.

The defendants do not dispute the calculation under the agreement of $111,325.37, but rather contest only Baymont's entitlement to such sum. The court will award Baymont $111,325.37 in liquidated damages plus prejudgment interest at the rate of 8% per annum.

### III. Lanham Act Treble Damages

Baymont seeks a treble damage award for the willful and unauthorized use of its intellectual property during the holdover period from April 25, 2005 to April 30, 2006. The parties agree that an appropriate measure of damage under the Lanham Act is the royalty that Baymont would have received from the defendants. The license agreement defines "Royalty," under § 9 Recurring Fees, as "5% of gross revenues attrributable to or payable for rentals of guest rooms and meeting rooms

---

[2]KRS 355.2-718 and the Restatement 2d of Contracts § 356(1)(1981) are identical to the Wisconsin provision.

at the Inn (collectively, "Gross Room Revenues"), including all credit transactions, whether or not collected, but excluding only telephone charges, vending machine receipts, and sales, occupancy and use taxes..."  Baymont has moved for an award of $178,875.99 representing treble the sum of $59,625.33 in royalties.

The defendants urge that Baymont is only entitled to $39,288.72 in royalties for the holdover period.  They urge that the royalty is limited to "Gross Room Revenues" as that term is defined in § 9(a), and therefore revenues from movies, pool charges, taxes, telephone and vending machine receipts and restaurant income must be excluded.  Baymont counters that Heartland included the Baymont marks in advertising its water park and restaurant, and has not excluded other income from its gross revenues in the past.

For purposes of making an award of damages under the Lanham Act for the defendants' willful conduct, the court will look to the precise language of the agreement.  As the provision addresses revenues attributable to or payable for rentals of guest rooms and meeting rooms at the Inn, the court will adopt the calculation offered by the defendants which excludes amounts for other revenues.  The royalty calculated from such revenues is $39,288.72.

The court will treble the royalty amount inasmuch as it appears clear that the defendants' holdover was willful and unjustified.  There is caselaw to support an award of treble damages in cases such as this one.  *KFC Corp. v. Lileoren*, 821 F.Supp. 1191 (W.D.Ky. 1993); *Ramada Inns, Inc. v. Gadsden Motel Co*, 804 F.2d 1562 (11th Cir. 1986), and cases cited therein.

## IV.  Attorneys' Fees

Baymont has moved for an award of attorneys' fees under both the license agreement and under 15 U.S.C. § 1117 providing for a reasonable attorneys' fee in exceptional cases.

Section 17(c) of the license agreement clearly provides for such an award.  The question remains what constitutes a reasonable fee in this instance.  Baymont seeks an award of $398,045.06.  While it provides substantiation in general terms of this fee request, the affidavit of counsel in this

regard provides insufficient detail for an award of this magnitude. Baymont's motion to be permitted to withhold its billing memoranda will be denied. Baymont will file its billing memoranda in a supplemental pleading, and will serve these documents on opposing counsel, as is usually done in such matters. The court has been shown no justification for confidentiality in this matter that would require these documents to be filed under seal. The defendants will be afforded a period of thirty days in which react and respond to these documents. Baymont will be afforded fourteen days thereafter for any further comment. The issue of the amount of the attorneys' fee to be awarded will then stand submitted for decision.

A separate order will be entered herein in accordance with this opinion.

**IT IS SO ORDERED.**